**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

APRIL HEARD, *as Administrator of the
Estate of Derrickia Heard*,

                Plaintiff,

v.                                                              Case No. 2:20-cv-02335-MSN-cgc

MONIQUE THOMAS,
*Individually*,

                Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL**

Before the Court is Plaintiff April Heard's timely Motion for New Trial (ECF No. 240)[1],

filed on September 26, 2024.    A jury trial was held in this matter in August of 2024.  The jury

returned a verdict in favor of Defendant Monique Thomas, and final judgment was entered on

August 30, 2024.  (ECF No. 239.)  Defendant replied in opposition to the Motion for New Trial

on October 10, 2024.  (ECF No. 250).  No reply was filed.  For the reasons below, Plaintiff's

Motion for New Trial is **DENIED**.[2]

In short, regardless of whether the jury's verdict on the "under color of law" issue was

against the weight of the evidence, a new trial is not warranted because the jury independently

found that Defendant's actions did not amount to a constitutional violation.  *See Robertson v.*

---

[1] Once the trial transcripts were released, Ms. Heard filed a "Corrected Memorandum In Support of Motion for New Trial" on October 28, 2024.  (ECF No. 252.)  The Corrected Memorandum purports only to add record citations and not substantive argument.  (*See* ECF No. 240-1, n. 1.)

[2] The Court also **DENIES** Plaintiff's Motion for Sanctions (ECF No. 242).

*Lucas*, 753 F.3d 606, 614 (6th Cir. 2014).  Since both elements are required for Plaintiff's § 1983 claim, and the jury's finding on the constitutional violation stands on its own merits, there is no basis for disturbing the verdict.

## BACKGROUND

This matter arose from a physical confrontation between a high school student and a school security officer who was employed by the local school district.  The Court assumes knowledge of the factual background, but to clear the muddied waters of the record, the Court discusses the relevant procedural history below.  Ms. Heard ("Plaintiff"), as parent and next friend of her daughter, Derrickia Heard, initially filed her Complaint in the Circuit Court of Shelby County, Tennessee, against both Monique Thomas ("Defendant") and her then-employer, the Shelby County Board of Education ("SCBOE").[3]  SCBOE properly removed the state lawsuit to this Court.  (ECF No. 1.)  The Complaint asserted a variety of tort claims under Tennessee law and various federal civil rights violations under 42 U.S.C. § 1983 against Defendant Thomas.  The federal claims included allegations that Defendant violated Derrickia Heard's First Amendment right to free speech, her Fourth Amendment protection against use of unreasonable force, and her Fourteenth Amendment substantive due process guarantee.[4]  (ECF No. 1-1 at PageID 12–14.)  Both Plaintiff's Fourth Amendment and Fourteenth Amendment claims arose from the same allegations of excessive force.

---

[3] SCBOE has since undergone a name change to "Memphis-Shelby County Schools."

[4] The Complaint also asserted state law claims and *Monell* liability against Defendant's employer, SCBOE.  (ECF No. 1-1 at PageID 12–14.)  In August of 2020, all claims against SCBOE were dismissed for failure to state a claim, leaving Monique Thomas as the only remaining defendant.  (ECF No. 13.)

2

I.        **<u>Summary Judgment</u>**

Following more than a year of discovery and mediation, Defendant filed a Motion for Summary Judgment on all claims.  (ECF No. 62.)  Defendant argued that summary judgment should be granted on Plaintiff's Fourteenth Amendment claim because the Fourth Amendment controls all claims of excessive force arising from a "seizure."  (ECF No. 62-1 at PageID 387.)  Specifically, Defendant argued that because Plaintiff's Fourth Amendment claim was grounded in the same factual allegations as her Fourteenth Amendment claim, Plaintiff should only be allowed to proceed on the former and summary judgment should be granted on the latter.  (*Id*.)  Defendant then argued that she was entitled to qualified immunity on the Fourth Amendment claim.  (*Id*.)  The Court denied summary judgment on both the Fourteenth and Fourth Amendment claims.  (ECF No. 109 at PageID 1181.)  At the time, the Court viewed Defendant's position with SCBOE as more akin to that of a school administrator than a law enforcement officer.  (ECF No. 109 at PageID 1175, n.7.)  Consistent with that finding, the Court undertook a traditional summary judgment analysis of Plaintiff's Fourteenth Amendment claim, relying in part on the legal standard set forth in *Gohl*.  *See Gohl v. Livonia Public School District*, 836 F.3d 672, 678–79 (6th Cir. 2016).  The Court then turned to Defendant's assertion of qualified immunity on the Fourth Amendment claim.  Because the Court viewed Defendant as a school official and not a law enforcement officer, the Court applied the "search and seizure" analysis for public school officials as stated in *Cochran*.  *See Cochran v. Columbus City Schools*, 748 F. App'x 682, 685 (6th Cir. 2018).  As the Court of Appeals later pointed out, the Court erred on both counts.

In contrast to the Court's view of Defendant's employment with SCBOE, both parties assumed that Defendant's employment was closer to that of a law enforcement officer than a school administrator.  In agreement, the Court of Appeals overruled this Court and held that Defendant's

employment was more akin to law enforcement, reasoning that because Defendant "graduated from the Police Academy, attended thirteen weeks of Memphis Police Department training for school resource officers, and described herself as a police officer, [she had] all [the] quintessential hallmarks of law enforcement." *Heard v. Thomas*, No. 22-5699, 2023 WL 4183455, at *2 (6th Cir. June 26, 2023). While the Court of Appeals affirmed the denial of qualified immunity on the Fourth Amendment claim, it did so by applying the *Graham* factors—not the *Cochran* factors as applied by this Court—to determine if Defendant's conduct violated the Fourth Amendment. *Id.* at *2. As to the Fourteenth Amendment claim, the Court of Appeals reversed this Court's denial of summary judgment, holding that Defendant was entitled to qualified immunity on the Fourteenth Amendment claim because Plaintiff alleged no other facts supporting a separate substantive due process violation. *Id*. at *3. At summary judgment, there was no argument on the "under color" issue before this Court or the Court of Appeals. After judgment was entered by the Court of Appeals, the only federal claim remaining was the Fourth Amendment violation.[5]

## II.        <u>March 18, 2024, Trial Date</u>

Following summary judgment, this matter was set for trial on March 18, 2024. Prior to this date, Plaintiff filed objections to, *inter alia*, Defendant's proposed jury instruction on the "under color" issue. (ECF No. 176 at PageID 1625–26.) A pretrial conference was held on February 16, 2024, where Plaintiff continued to dispute the proposed "under color" instruction. (ECF No. 183 at PageID 1661–64.) The Court ordered the parties to continue their attempts to reach consensus and resubmit their joint pretrial order the next week. (*Id.* at PageID 1664.) The

---

[5] In July of 2023, Derricka Heard passed away from causes unrelated to the facts of this case. (ECF No. 128.) April Heard, as Administrator for the Estate of Derricka Heard, was substituted as the proper plaintiff for the remaining § 1983 claim and the state law IIED claim. (ECF No. 166.)

final pretrial order was entered on March 15, 2024.  (ECF No. 191.)  The pretrial order listed "[w]hether defendant was engaged in police conduct" as one of Plaintiff's contested issues of fact. (ECF No. 191 at PageID 1752.)

On the first morning of trial, the Court addressed Plaintiff's objection to Defendant's proposed "under color" jury instruction.  (ECF No. 204 at PageID 1953–54.)  Plaintiff argued that inclusion of the "under color" instruction was "disingenuous at best" because the issue had already been decided at summary judgment and Defendant had not previously raised this issue during the course of litigation.  (ECF No. 176 at PageID 1625–26.)  Defendant responded that the "under color" issue was an essential element of Plaintiff's § 1983 claim, and that while she did not believe it would be a "heavy lift" for Plaintiff to prove that Defendant was acting "under color," she intended to put Plaintiff to her proof on the issue.  (ECF No. 204 at PageID 1954.)

The Court then reviewed its preliminary jury instructions with the parties.  Those instructions described Defendant as a "school resource officer," a title that both parties had used throughout litigation.  Defendant objected to the use of this title, disclosing—for the first time— that her employment with SCBOE was as a "school security officer," a position that was legally

distinct from that of a "school resource officer" under Tennessee law.[6] (*Id*. at PageID 1957.) After

a brief recess, Plaintiff represented to the Court that the legal difference between a "school resource

officer" and "school security officer" was significant and requested more time to research the issue.

(*Id*. at PageID 1969–70.) Plaintiff's main concern was that Defendant would use this statutory

difference to argue that Defendant's actions were not "under color" to the jury. Defendant

represented that, in her view, the legal difference between the two positions was a distinction

without much difference for the purposes of trial, arguing that her employer and title have been

known from the beginning of litigation and that her only purpose in raising the issue now was

related to being precise in the jury instructions. (*Id*. at PageID 1975.) The Court understood

Defendant's position to be that the nature of her work has always been discoverable and is relevant

to the jury's reasonableness analysis using the *Graham* factors. Plaintiff argued waiver, but the

Court found that argument unavailing under the circumstances because (1) Plaintiff was always

aware that Defendant was not employed by law enforcement and that her official title was mobile

security officer; (2) both Plaintiff and Defendant intended to elicit testimony from Monique

Thomas and her superiors as to the nature of her job; and (3) such information was relevant to the

---

[6] Accepting partial blame for the misunderstanding, counsel for Defendant, Ms. Morton, directed the Court to two statutes that define the respective positions. Ms. Morton disclosed that Tennessee law expressly distinguished between the two roles, and that a "school security officer" was not considered law enforcement under the authorizing statute. *See* Tenn. Code Ann. § 49-6-4206. The key differences from Defendant's reading of state law were that "school resource officers" were (1) employed by local law enforcement agencies; (2) assigned to local schools according to a memorandum of understanding with the local education agency; and (3) given arrest powers traditionally associated with law enforcement. *Compare* Tenn. Code Ann. § 49-6-4206 *with* Tenn. Code Ann. § 39-11-106. In contrast, Defendant's position as a "school security officer" meant that she was "not employed by a law enforcement agency, she was not assigned . . . in accordance with a memorandum of understanding between the School Board and a law enforcement agency, and not a 'law enforcement officer' with the power to make arrests for offenses under Tenn. Code Ann. § 39-11-106(24)." (ECF No. 202 at PageID 1857; *see also* ECF No. 204 at PageID 1957.)

jury's determination under the *Graham* factors. Plaintiff asked if Defendant would concede "that she was a state actor" to avoid further delay; Defendant refused. (*Id*. at PageID 1970–71.) The Court ordered further briefing on the statutory differences to be submitted the following morning.[7] (*Id*. at PageID 1983.)

The Court also discussed qualified immunity and Plaintiff's proposed First Amendment jury instruction. (*Id*. at PageID 1959, 1963.) As to qualified immunity, Defendant represented that she expected "different facts to come in today," and that those facts, she argued, would put the question of qualified immunity properly before the jury. (*Id*. at PageID 1959.) Accordingly, Defendant's proposed verdict form included three special interrogatories for the jury to answer so that the Court could rule again on qualified immunity at the end of trial. (*Id*. at PageID 1959–60). The Court included these special interrogatories on the final verdict form over Plaintiff's objections.

As to Plaintiff's proposed First Amendment jury instruction, Plaintiff argued that the special jury instruction was necessary because she expected Defendant to testify that her actions were caused, at least in part, by Derrickia's threatening words that day. (*Id*. at PageID 1963.) Defendant objected to Plaintiff's proposed First Amendment instruction, arguing that Plaintiff's First Amendment claim had been dismissed at summary judgment and any First Amendment argument would be confusing to the jury and irrelevant to the Fourth Amendment analysis. (*Id*. at

---

[7] In ordering additional briefing, the Court's primary concern was determining if the statutory differences between "school security officer" and "school resource officer" would alter the planned analysis under the Fourth Amendment. At summary judgment, the Court found that Defendant's position was more akin to a school administrator than a law enforcement officer. Ultimately, Defendant did not challenge the Fourth Amendment analysis, and the parties proceeded under that standard.

PageID 1965–66.)  The Court agreed with Defendant and sustained her objection to the proposed

First Amendment instruction.  The Court recessed until the following morning.

### III.        March 19, 2024, Trial Date

The next morning, the parties submitted their briefs, and the Court permitted additional

oral argument to supplement their overnight briefing.  (ECF No. 205 at PageID 1991.)  Plaintiff's

Brief focused exclusively on the argument that Defendant could be held liable for a Fourth

Amendment violation under *New Jersey v. T.L.O*, 469 U.S. 325 (1985)—a proposition that

Defendant did not dispute in its briefing.  (ECF No. 195 at PageID 1832.)  Plaintiff also moved for

a continuance, arguing that Defendant's recent revelation about the statutory differences required

more time and additional discovery.  (ECF No. 205 at PageID 2013–19.)  Defendant's Brief went

much farther.  Defendant's Brief laid out the differences between the two statutes and argued that

the excessive force jury instruction should be "modified to reflect the realities of [Defendant's]

position as a school security officer without arrest powers rather than a law enforcement officer."

(ECF No. 202 at PageID 1859.)  Defendant also requested an additional special jury instruction

that instructed the jury on the statutory duties of a school security officer.  (*Id*.)  Defendant argued

that "we're still stuck with the Fourth Amendment *Graham* factors," therefore, "at a minimum

when we say [Defendant's actions] need to be viewed from the reasonable perspective of a

reasonable officer, [it] should probably say a 'reasonable school security officer.'"  (ECF No. 205

at PageID 1998–99.)  The Court asked Defendant directly if she intended to use these newly

discovered Tennessee statutes to argue that Defendant was not acting "under color."  (*Id*. at 2011–

12.)  Defendant responded:

> That she's a state actor? As I stand here right now, I have no basis to do that . . . .
> [U]ntil yesterday, counsel raising that as an issue was the first time it became an
> issue as far as we are concerned.  And I asked Mr. King to send me the case he has.
> I don't have it.  He did not send it to me.  So perhaps if I review that case that can

clear all this up.  I'm hesitant to say we're not going to raise it . . . but other than that, I don't know why we're spending so much time on this issue because we've not said that's what we're going to do.

(*Id*. at PageID 2012.)

Based on Defendant's Brief and her other in-court representations,[8] the Court understood Defendant's position to be that she wanted the true nature of Defendant's position reflected in the jury instructions because it would aid the jury in assessing the reasonableness of Defendant's actions under the Fourth Amendment, not the "under color" issue.  (*See* ECF No. 205 at PageID 1997–2000, 2002–03; *see also* ECF No. 243 at PageID 2250.)  The only new "issue" was Defendant's argument that she did not have the same arrest powers as a duly authorized law enforcement officer and that this "fact" was relevant to the jury's Fourth Amendment reasonableness analysis.[9]  (*Id*. at PageID 1998.)  On this point, the Court agreed that the nature of

---

[8] Counsel for Defendant, Ms. Morton, stated: "As to the question about whether or not she was a state actor, we have never said that she was not a state actor.  We did not say that yesterday. We did not say that before yesterday.  We've never said that.  What I just discussed is the reason that I think it's important to just outline and make sure the jury understands that she is not a police officer, she is not a law enforcement officer."  (ECF No. 205 at PageID 1999.)  Ms. Morton continued by saying that the only reason she made the Court aware of the two Tennessee statutes is that "we wanted precision because there is a difference under Tennessee state law . . . . [W]e have never used that or intend to use that to argue that she was not a state actor.  That never happened.  I'm not sure where that came from."  (*Id*. at 2006–07.)  Finally, Ms. Morton stated: "One issue I think is that we're conflating the issue of state actor and the concept of whether or not the case proceeds under the Fourth and Fourteenth Amendment.  As [Plaintiff's] counsel said yesterday, the state actor issue would apply to either one.  So that's a distinct issue.  And I've represented here in court this morning that I have no authority to suggest that [Defendant] . . . is not a state actor."  (*Id*. at PageID 2011.)

[9] In retrospect, whether Defendant possessed arrest powers or not is not at all clear from the face of the statute.  *See* Tenn. Code Ann. § 49-6-4206.  Neither party has cited any case that would support or dispute the proposition that school security officers have no arrest powers.  In any event, whether the Tennessee statute confers arrest powers on school security officers is a question of law and not one of fact, as Ms. Morton seemed to suggest.  During the March trial dates, Plaintiff seemed to accept this fact at face value, and focused her arguments on waiver and Defendant's amenability to suit for violations under the Fourth Amendment.  Plaintiff later disputed this idea during the August trial.

Defendant's employment and training was relevant to the jury's reasonableness analysis and would work no prejudice to Plaintiff's case if the jury heard proof on those issues. In fact, it was apparent from the pretrial order that both parties intended to elicit proof about Defendant's employment and training—two issues that had been at issue since the beginning of litigation. Instructing the jury that training and the scope of duties could be considered when assessing the reasonableness of Defendant's actions was in alignment with the federal pattern jury instructions and relevant § 1983 case law. Nevertheless, "in an abundance of precaution and in order of fairness," the Court granted Plaintiff's motion for a continuance to allow more time to research the arrest powers issue. (ECF No. 205 at PageID 2019.)

## IV.      **Motion to Reopen Discovery**

Two weeks later, Plaintiff filed a Motion to Reopen Discovery. (ECF No. 203.) During the March 19 trial date, the Court indicated on the record that it would be willing to consider such a motion but only if Plaintiff could show it necessary. (ECF No. 205 at PageID 2019.) Plaintiff stated that she would "seek discovery regarding Monique Thomas police officer standard training through the Memphis Police Department and juxtapose that with Security Officer Training pursuant to T.C.A. 49-6-4206." (ECF No. 203-1 at PageID 1918.) Defendant opposed the motion, arguing that her employment with SCBOE has been known from the beginning of litigation in this matter, as evidenced by Plaintiff's own Complaint. (ECF No. 207 at PageID 2030.) Defendant further pointed out that she produced her personnel file in discovery, which included an assignment sheet, employment application, and the SCBOE offer letter, all of which made clear Defendant's title as a "mobile security officer." (*Id*. at PageID 2030–31.) Based on these facts, Defendant argued that Plaintiff had every opportunity to seek information regarding Defendant's training

10

when she deposed both Defendant and Defendant's commander, Chief Carolyn Jackson. (*Id*. at PageID 2033.)

The Court ultimately agreed that Plaintiff did not show sufficient cause to reopen discovery. (ECF No. 221.)  Defendant's training and the scope of her duties were always going to be an issue, and their relevance was never in dispute.  Plaintiff had the opportunity to explore her training in discovery, and the late disclosure of the Tennessee statute governing Defendant's position did not change the training Defendant actually received.  Further, the Court flagged this very issue in its denial of summary judgment when it found Defendant's job to be more akin to a school administrator.  (ECF No. 221 at PageID 2135.)  Finally, the Court found that reopening discovery under those circumstances would have prejudiced the Defendant, given that litigation had been ongoing for more than four years.  (*Id*. at PageID 2136.)

## V.        **The August 2024 Trial**

After a second continuance due to illness, the Court set a new trial date for August 12, 2024.  On the first morning of trial, Plaintiff reraised the same arguments she made in March, in her Motion to Reopen Discovery, and in her Motion in Limine, to exclude mention of Defendant's job title.  (*See* ECF 222 at PageID 2137–42.)  The sum of Plaintiff's arguments was that Defendant's revelation about the statutory differences between a "school security officer" and a "school resource officer" constituted unfair surprise and that Plaintiff should be allowed to re-depose Chief Carolyn Jackson or, in the alternative, the Court should grant Plaintiff's motion in limine to preclude mentioning Defendant's job title.  (*See* ECF No. 243 at PageID 2244–47, 2253.)  Plaintiff also argued that the issue of qualified immunity was decided by the Sixth Circuit and should not be reconsidered at trial.  (*Id*. at PageID 2253.)  Defendant reiterated that all she was asking for was for the jury to evaluate the reasonableness of her actions in light of what her job

actually was.[10]  (*Id*. at PageID 2250–51.)  As to qualified immunity, Defendant argued that there

would be new facts coming in at trial that would permit the Court to decide qualified immunity

again; Defendant stated clearly that she had not waived the qualified immunity argument for trial.

(*Id*. at PageID at 2256–57.)  Finally, Defendant argued that Plaintiff had already deposed Chief

Jackson and that she was always going to testify about the duties of a mobile security officer

employed by SCBOE.  (*Id*. at PageID 2260.)  To strike a middle ground, the Court suggested that

Defendant should be referred to simply as an "officer" and to let the facts about her training and

the scope of her job duties fall where they may—i.e., "don't say security officer; don't say resource

officer."[11]  (*Id*. at PageID 2252.)  The Court also relied on the fact that Chief Carolyn Jackson had

been listed as a potential witness in this case in the original pretrial order, and that Plaintiff deposed

---

[10] Ms. Morton argued: "[s]o the only thing we want is to be able to have the jury look at the facts as though they occurred within the context of what her job actually was.  She's not a police officer out on the streets of Memphis.  That's not what she's doing.  She has specific job duties within the school environment . . . [that are] defined by state law."  (ECF No. 243 at PageID 2050.)

[11] In the present Motion for New Trial, Plaintiff states that "the Court amended the Pretrial Order to benefit Defendant's new theory, even though Defendant never sought leave to amend," even though Plaintiff "sternly objected."  (ECF No. 240-1 at PageID 2191.)  It appears that this statement is referring to the Court's suggestion that the preliminary jury instructions refer to Ms. Thomas as an officer who was employed by SCBOE.  The Court is unaware of any other amendments.  Further, Plaintiff's original memorandum indicated that Plaintiff would provide specific record citations on this very point once the transcripts were released.  (*Id*., n.2.)  However, Plaintiff's corrected memorandum includes no such citation.

The Court notes that Fed. R. Civ. P. 16(e) permits the district court to amend a pretrial order following a final pretrial conference in order to prevent manifest injustice.  Indeed, the "manifest injustice" standard is a high bar, but amendment may occur if the danger of surprise or prejudice to the opposing party is small. *See* Wright & Miller, Federal Practice & Procedure, §1527.1.  No doubt Defendant's March surprise prejudiced Plaintiff's case, but the Court granted a continuance to alleviate this prejudice.  The Court opted to use the above language to ensure fairness to both parties, and doing so did not constitute unfair surprise or prejudice to Plaintiff's case.  In the end, Plaintiff had nearly five months to prepare for this very issue.

her early in the litigation.    (*Id*. at PageID 2254–55.)   Ultimately, the Court rejected Plaintiff's

arguments—as it had done in March— and proceeded to jury selection.

**<u>DISCUSSION</u>**

Plaintiff now moves for a new trial under Fed. R. Civ. P. 59.   Rule 59 provides that a new

trial may be granted following a jury verdict "for any reason for which a new trial has heretofore

been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The moving party

is entitled to a new trial "when a jury has reached a seriously erroneous result as evidenced by: (1)

the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the

trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by

prejudice or bias." *Mosby-Meachem v. Memphis, Light, Gas & Water Division*, 883 F.3d 595, 606

(6th Cir. 2018) (citation omitted).

Although Plaintiff seeks a new trial on both the federal civil rights claim and the state tort

claim, her argument focuses almost exclusively on the "under color of state law" issue pertaining

to the former.  The sum of Plaintiff's argument as to the state tort claim is that "akin to the doctrine

of the 'fruit of the poisonous tree,' the jury's finding that Defendant was not acting under color of

state law poisoned the entire verdict . . . ."  (ECF No. 252 at PageID 2941.)  Plaintiff's argument

is not well-taken, and the jury's verdict will stand as to the state tort claim.  As to the federal civil

rights claim, Plaintiff argues that (1) the "under color of state law" question was improperly

submitted to the jury; (2) she was prejudiced by the three "First Amendment" questions included

at the end of the special verdict form; (3) the jury's verdict was against the weight of the evidence;

and (4) the prejudicial effect of the proceedings before and during trial warrant a new trial.  (*See

generally* ECF No. 240-1.)  Here, damages are not an issue.  Plaintiff's first and second theories

complain of what she views as errors by the Court during trial; her third theory challenges the

weight of the evidence; and her fourth theory alleges that misconduct by opposing counsel prejudiced her case. Each of these theories are related to Defendant's assertion that she was not a "school resource officer" but instead a "school security officer" without arrest powers under Tennessee law, and the ways in which that fact was put before the jury. The Court will address each in turn below.

## I.      Errors by the District Court

Plaintiff argues that the Court erred in two ways: first, when it submitted the "under color" question to the jury; and second, when it included the special interrogatories on the final verdict form. (ECF No. 240-1 at PageID 2193–97.)  Defendant responds that when she asked the Court to instruct the jury on her proper title and job duties with SCBOE, she was not raising a new defense or argument. (ECF No. 250 at PageID 2913.) Defendant further argues that she is entitled to a jury decision on the "under color" issue because the issue is an essential element of Plaintiff's § 1983 claim, and to the extent the Court could have decided the "under color" issue as a matter of law, Plaintiff never moved the Court to do so.[12]  (*Id.* at PageID 2914, 2917.)  The Court will address the "under color" instruction first and then the special interrogatories.

On these facts, submission of the "under color" instruction to the jury does not warrant a new trial. Plaintiff tried two of her claims to verdict. The claim at issue here is the civil rights violation under 42 U.S.C. § 1983. Section 1983 provides a remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another

---

[12] In rather unhelpful fashion, Defendant supports her arguments with no affirmative legal authority; instead, she merely argues that Plaintiff's precedential authority is not on all fours with her arguments supporting a new trial. Distinguishing opposing authority is unquestionably a helpful tactic—but only when it is paired with some affirmative argument. To proceed with the former absent the latter is merely conclusory and altogether unhelpful. This type of argument has been a consistent feature of this litigation on both sides, and it is one reason why litigation has continued into year six.

person of federal rights secured by the Constitution or laws of the United States.  42 U.S.C. § 1983.

To prevail on a § 1983 claim, a plaintiff must prove two distinct elements: "(1) that [] she was

deprived of a right secured by the Constitution or laws of the United States; and (2) that the

deprivation was caused by a person acting under color of state law." *Robertson v. Lucas*, 753 F.3d

606, 614 (6th Cir. 2014).  Plaintiffs bear the burden to establish both elements of their § 1983

claim.  *Id*.  Generally, whether a § 1983 defendant was acting under color of state law is a legal

issue for the court to decide.  *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002); *see*

*also Mackey v. Rising*, 106 F.4th 552, 564 (6th Cir. 2024).  Still, such questions are often sent to

the jury when the answer "turns on a dispute about [] historical facts" (e.g., what a police officer

said in the moment).  *Mackey*, 106 F.4th at 564.

Here, both § 1983 elements were submitted to the jury for consideration.  There is no

challenge to the content of the instruction.  The question presented is whether the instruction should

have been given at all, and, if not, whether that warrants a new trial.  At both the March trial setting

and the August trial, Plaintiff failed to articulate any argument—much less make any motion—for

this question to be decided as a matter of law by the district court.  Instead, Plaintiff focused

exclusively on (1) her waiver argument—namely, that Defendant's disclosure after the final

pretrial conference constituted waiver—or (2) her argument that the Sixth Circuit had already

decided the "under color" issue at summary judgment—both of which the Court found

unpersuasive at the time.

Ultimately, though, the Court need not opine on whether submitting the "under color" issue

to the jury constitutes error.  First, even where the Court of Appeals has agreed that an "under

color" question should have been decided by the district court, it has held that submitting the

question to the jury did not constitute error. *See Stengel v. Belcher*, 522 F.2d 438, 441 (1975).  In

*Stengel*, the plaintiffs-appellees argued that the district court should have decided the "under color" issue as a matter of law. *Id*. The Sixth Circuit agreed, but also stated that "[o]ut of an abundance of caution the district court submitted this factual issue to the jury . . . . We see no objection to this procedure." *Id*. Second, and perhaps most importantly, "even erroneous instructions do not require reversal unless the instructions are 'confusing, misleading, *and* prejudicial.'" *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 448 (6th Cir. 2011) (quoting *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 488 (6th Cir. 2009)). In other words, the Sixth Circuit "will 'not reverse a decision on the basis of an erroneous jury instruction where the error is harmless.'" *Id.* (quoting *Pivnick*, 552 F.3d at 488 (internal citations omitted)).

With this legal backdrop in mind, the Court has reviewed the record, including both the March and August trial transcripts, and it is apparent there was never a clear factual dispute that would have *necessitated* submission of the "under color" question to the jury.[13] And no additional facts came in at trial that would have altered this analysis.[14] Nevertheless, the Court submitted the "under color" question to the jury out of an abundance of caution. This procedure tracks with the procedure approved of in *Stengel*. 522 F.2d at 441. But even assuming *arguendo* that the Court *did* err in submitting the "under color" question to the jury, such error was harmless because the verdict had an independent basis. Specifically, the jury found that the Defendant did not deprive Plaintiff of any right secured by the Constitution or laws of the United States. (ECF No. 236.) That finding, on its own, was fatal to Plaintiff's § 1983 claim. *See Robertson*, 753 F.3d at 614.

---

[13] The Court pushed the parties for a stipulation on this point, but to no avail.

[14] The Court acknowledges that there was direct, albeit very brief, testimony from Chief Carolyn Jackson that Defendant did not possess arrest powers and, therefore, could not have acted under color of state law. (ECF No. 247 at PageID 2724.) Chief Jackson's testimony on this point was improper and, for reasons discussed in Discussion section III, highly suspect. Despite this, Plaintiff permitted Chief Jackson's direct testimony to continue without objection.

16

And Plaintiff has presented no evidence or good reason to believe that submitting the "under color" issue to the jury in any way affected its consideration of the second element of Plaintiff's § 1983 claim.[15]  Indeed, they are separate inquiries.  Accordingly, there is no basis to order a new trial because of the "under color" issue.

Similarly, inclusion of the special interrogatories on the verdict form was not an error that warrants a new trial.  Defendant requested these interrogatories because she expected new facts to come in at trial that would have, arguably, changed the qualified immunity outcome at summary judgment.  The interrogatories served the purpose of aiding the Court in making a qualified immunity determination—a determination that was ultimately not necessary given the jury's verdict in this case.  Plaintiff's argument on this point is limited to these questions having "nothing to do with the issues raised in the *Graham* case."  (ECF No. 240-1 at PageID 2197.)  The Court disagrees.  Further, Plaintiff conflates this issue with her complaints over the Court's refusal to include her own proposed First Amendment instruction.  (*Id*.)  The Court is not at all clear on how these two issues fit together, but in any event, Plaintiff's argument on this point is conclusory and without supporting authority.  Even if it was supported with relevant case law, there is clear precedent that the qualified immunity defense can be raised at the various stages of litigation, including at trial, and even when it has been denied at previous stages.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). Contrary to Plaintiff's assertions, there is no evidence the jury was confused by the inclusion of these special interrogatories, and even if they were, the accompanying jury instructions would have cured any confusion.  Therefore, including the special interrogatories on the final verdict form does not warrant a new trial.

---

[15] The best Plaintiff can muster is the bare assertion, without support, that "[s]ince Defendant was a private citizen, the jury found that Defendant's conduct could not have been based on outrageous conduct."  (ECF No. 240-1 at PageID 2199.)

17

**II.**        <u>**Whether Verdict Was Against the Weight of the Evidence**</u>

Plaintiff also moves for a new trial on the basis that the jury's verdict was against the clear weight of the evidence. When considering whether the jury's verdict was against the weight of the evidence, the judge must "to some extent at least, substitute his judgment of the facts and the credibility of the witnesses for that of the jury." *Mosby-Meachem*, 883 F.3d at 606 (citation omitted). The district court must compare opposing proofs, weigh evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence; "the motion should be denied if the verdict is one which could reasonably have been reached, and the verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir. 1993) (citation omitted).

Here, Plaintiff argues, with no support whatsoever, that because the jury found that Defendant was a "private citizen," they "concluded . . . that Defendant had a right to strike Derrickia and thus, Defendant's conduct was therefore not outrageous." (ECF No. 240-1 at PageID 2199.) But, as above, there is no reason to believe that the jury's finding on the "under color" issue affected in any way at all their analysis of Defendant's actual conduct. The jury's findings on the reasonableness of the Defendant's actions were clear, and they were independent of their finding on the "under color" issue. Of the two elements required by Plaintiff's § 1983 claim, the jury needed to answer only one in the negative in order to return a verdict in favor of Defendant. Here, they answered both in the negative. The Court declines to upset the jury decision as to the constitutional violation because there is no evidence that the jury's decision on this point was in any material way impacted by their decision on the "under color" element. To the contrary, the verdict form—including the special interrogatories—indicates that the jury considered whether

Defendant violated Derrickia's constitutional rights *independently* of whether Defendant acted under color of state law. (ECF No. 236.) Therefore, the Court declines to grant a new trial when there was an independent basis for the verdict that was returned.

III.        **Misconduct by Opposing Counsel**

Plaintiff goes on to argue that the testimony of Carolyn Jackson on the "under color" issue was prejudicial to her case. (ECF No. 252 at PageID 2945–47.) Ms. Jackson was, at the time of the incident, Chief of Safety and Security for the school system and supervised all mobile school officers employed by the school system, including Defendant. At trial, Defendant elicited the following testimony from Ms. Jackson:

> Q:    Are there different types of officers that make up the safety and security department of Memphis-Shelby County Schools?
>
> A:    Yes.
>
> Q:    Can you tell the jury what those are?
>
> A:    So we have our officers that are in schools every day, and those are our— we call them—they're not SROs by state law because by state law, an SRO is a law enforcement officer. And you can only be an SRO if you are a law enforcement officer working in a school. So we do have those. And we work with the Sheriff's department, and they have deputies that are assigned to designated schools.
>
>    And then we have our officers that are security officers and they're Memphis-Shelby County mobile security officers, and they work in schools. They work in the same capacity, but they have different titles. The deputies that work in the schools are law enforcement and, of course, they have arrest powers, and they are bound by law and color of law.
>
>    Our officers [the mobile security officers] do not have arrest powers, and they are not bound by color of law, so when our officers make an arrest, we have to make a call and notify the law enforcement agency to make the scene and they take it over because we do not have arrest powers.

(ECF No. 247 at PageID 2723–24.)

19

The Court is in agreement with Plaintiff that Ms. Jackson's testimony on this point was improper. The Court finds it suspect that Ms. Jackson, a non-lawyer, was so well-versed in "under color" language. Regardless of whether the "under color" issue should or should not have been submitted to the jury, Ms. Jackson had no business testifying to conclusions of law. And counsel for Defendant, Mr. Jones, should have never repeated this testimony, as he did, during closing argument. Still, any objection to Ms. Jackson's testimony has been waived because Plaintiff failed to raise any contemporaneous objection to this testimony.[16] And any prejudice worked by Mr. Jones' closing argument was cured when the Court instructed the jury that statements of counsel were not considered evidence. (ECF No. 247 at PageID 2803–04.) To the extent Plaintiff complains of the Court's order on her Motion to Reopen Discovery and her Motion in Limine, the Court declines to grant a new trial on those bases. To the extent Plaintiff complains of improper testimony of Ms. Jackson, Plaintiff failed to object. And to the extent Plaintiff complains of Mr. Jones' closing argument, any prejudice was cured by the Court's instructions to the jury. Therefore, Plaintiff's motion for new trial on the basis of prejudice before and during trial is denied.

## IV.    **Motion for Sanctions**

To be clear, this case continues to be litigated nearly six years after its inception, in part, because of how Plaintiff has prosecuted this case, and, in part, because of Defendant's strategic

---

[16] Plaintiff allowed the direct examination of Ms. Jackson to continue uninterrupted. On cross, Plaintiff questioned Ms. Jackson for a time and then requested a sidebar. (*See* ECF No. 247 at PageID 2742.) At sidebar, Plaintiff reraised old arguments regarding the Court's refusal to reopen discovery but offered no other objection. The Court stated at the time: "There's no objection before me. You're over here talking about the testimony you're eliciting. I mean, you're not objecting to something somebody else is bringing up." (ECF No. 247 at PageID 2745.) Plaintiff's co-counsel made clear that "all he's doing is just preserving the objection on the order that's already been entered on the discovery issue." (*Id.*)

lawyering that, at times, has come dangerously close to misconduct.  Plaintiff has filed a Motion for Sanctions alleging as much.[17]  (ECF No. 242.)  The Court cannot definitively say that Defendant deliberately misled the Court; however, it is clear from the record that Defendant elicited the precise testimony from Ms. Jackson that she *repeatedly* stated she would not.  Further, Defendant's suggestions that she had no duty to disclose the statutory differences between a school security officer and a mobile security officer do not comport with counsel's duty of candor to this tribunal. She may not be obligated to disclose every argument and defense that may come up at trial, but she is certainly obligated to inform the Court as to matters of law.  There is nothing in the record that reveals when Defendant discovered the statutory differences between a "school security officer" and "school resource officer."  The Court assumes, without evidence to the contrary, that she disclosed this information at the earliest possible opportunity.  And when she did disclose it, the Court granted Plaintiff a continuance to cure any prejudice.  For these reasons, and all the reasons given above, the Court **DENIES** Plaintiff's Motion for Sanctions.

### CONCLUSION

Because Plaintiff has not met her burden under Rule 59 and sanctions are not warranted, Plaintiff's Motions for New Trial (ECF No. 240) and Sanctions (ECF No. 242) are **DENIED**.

**IT IS SO ORDERED**, this 31st day of March, 2026.

*s/ Mark S. Norris*

MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[17] The Court does not credit Plaintiff's assertions therein that defense counsel put forward positions that were "frivolous and in violation of 28 U.S.C. § 1927." (ECF No. 242-1 at PageID 2233.)